RENSHAW, Defendant in Error, *vs.* STEAMBOAT PAWNEE, Plaintiff in Error.

1. The admissions of the owner of a boat, made after the boat has been seized and ordered to be sold, are not competent to establish a demand presented for allowance as a lien upon the proceeds.

*Error to St. Louis Circuit Court.*

*Hart & Jecko*, for plaintiff in error. The admissions of Langhorne, made after the boat was placed in the custody of the law, and had been ordered to be sold, were not competent to establish the plaintiff's demand. It is against the reason and spirit of the act, that the owner should be allowed thus to affect the rights of the creditors of the boat, after she has passed from his possession and control. 2. The assignee of a lien claim cannot sue in his own name and enforce the lien under the boat and vessel act.

*Krum & Harding*, for defendant in error. 1. Langhorne's answer was properly admitted in evidence, because it was the admission of the owner of the boat. *Phelps* v. *Steamboat Eureka*, 14 Mo. Rep. 532. The admission was made before the sale, while Langhorne was still the owner, but even if it had been made after the sale, Langhorne was the owner of the fund arising therefrom, and was as competent to bind that, as to bind the boat. 2. The suit was properly brought by Renshaw, the assignee, in his own name.

RYLAND, Judge, delivered the opinion of the court.

The question in this case regards the admission of the answer of Langhorne to prove the indebtedness of the steamboat Pawnee to Renshaw, the present respondent. The boat had been seized by the sheriff of St. Louis county, on the 16th of June, 1853, by virtue of two writs from the Court of Common Pleas, and no bond being given, the boat was ordered to be sold. This order was made on the 22d of June, 1853; the sheriff sold the boat on the 19th of July following, and William Renshaw, jr., became the purchaser.

William Renshaw, jr., the respondent, made his complaint against the steamboat for the sum of $754 66. He charged that this claim accrued on account of services rendered Maurice Langhorne, the master, by one William H. Leonard, as pilot on the boat; also for services rendered by one Wiley Jones, also as pilot on said boat; also for services rendered by one John Mangan, as second mate. The said Renshaw averred that all these claims had been assigned to him by these persons; thereupon a warrant issued in his favor against the said boat, on the 29th day of June, 1853, after the order of sale had been made on the two warrants first mentioned above, but before the day of sale, which was the 19th day of July. On the 20th day of October, 1853, said Langhorne, alleging that he was sole owner and master of the said boat, filed his answer to the complaint of Renshaw, admitting the demand and authorizing judgment to be entered for the amount. This answer was subscribed and sworn to by Langhorne, on the 5th day of July, 1853, before the sale of the boat. On the 21st of October, 1853, judgment was rendered by the court on this claim, in favor of Renshaw, for the sum of $769 75, and placed in the first class. The bill of exceptions shows that when this claim of Renshaw was presented for allowance, he offered to prove it by the answer of said Maurice Langhorne. He proved that Langhorne was master and owner of the boat, Pawnee, at the time she was seized by the sheriff, on the

two writs from the Common Pleas; then offered his answer, confessing the debt and authorizing judgment therefor; to which answer the creditors of the boat objected, and Harlow, one of the creditors, prayed the court to reject the answer of Langhorne, as proof of any indebtedness by the boat. But the court overruled the objection, permitted the answer to be read, and the creditors excepted to this ruling of the court. This being all the evidence, the court rendered judgment for the claimant. A motion was made to set this judgment aside, which being overruled, exceptions were taken, and this case comes here by writ of error.

1. In ordinary cases, no doubt, the owner of a boat is competent to admit its indebtedness. *Phelps* v. *Steamboat Eureka*, 14 Mo. Rep. 535. The statute declares, "that neither the captain, clerk nor other officer of any boat or vessel, shall have power to bind the boat or vessel, by giving bonds or notes, or by making any other admission of indebtedness of the boat to any person whatever." This prohibition extends to officers, as such, and not to owners. The person who is both captain or master and owner may bind his boat, by admitting its indebtedness. It was to protect the property of owners of boats from liability to seizure by the admissions of officers of the boats. There was no reason why an owner could not be allowed to give his note or to make his admission of the indebtedness of his own boat.

So much, then, for the authority of the owner, in ordinary cases; but in this case now before the court, the creditors of the boat contend that Langhorne, whose boat had been seized, was ordered for sale, was sold, and the proceeds directed to be distributed among the creditors, was not considered as owner; nor was it competent for any admissions he might make, to be given in evidence, in a controversy among the creditors of the boat for distribution.

Here is a controversy in which the creditors of the boat are engaged: a dispute which they are carrying on among themselves as to the debts of the boat; in this dispute, Lang-

Renshaw *v.* Steamboat Pawnee.

horne himself would have been a competent witness. But the admissions of Langhorne, made after the order of sale, we consider not competent. It would open the door to immense fraud; to allow an owner, by his admissions, to change the rights of the parties. The boat had been taken from Langhorne by the officers of the law; he could not then be considered such an owner as, by law, was authorized by any admissions or conversations after this act, and an order of sale of the boat, to affect the boat; he could not increase the liabilities or debts of the boat by mere admissions. His admissions were but hearsay evidence; they should have been rejected. This case is similar in principle to the case of *Smallcombe* v. *Burges*, 13 Price, 136. (6 Eng. Exch. Rep. 51.) In this case, it was held that an acknowledgement of a debt by a trader, who had become bankrupt, by an admission made *before the issuing of the commission*, to an attorney employed by the assignees, in an action of trover, brought by them against a third person, on account of the estate, is not admissible in evidence to establish the petitioning creditor's debt in proving the bankruptcy in support of such an action, if the admission were made *after the act of bankruptcy*. Alexander Lord, Chief Baron, said: "The question for our consideration in this case was, whether an acknowledgment by the bankrupt of the petitioning creditor's debt, in a conversation which took place between him and the witness, after the act of bankruptcy, but before the commission issued, could be received in evidence in support of the commission. Such admission was held not receivable in evidence by the whole court. The Chief Baron said: "I consider that it is clearly established law, that a bankrupt, after the act of bankruptcy, is incapable of affecting his estate by any act of his. He cannot contract a debt, nor do any thing to affect his property in any manner. He cannot part with it, or, by any means, bind it in any respect. Now, if this be so, it would be most extraordinary to hold that, whilst he was under all these disabilities, he might yet, notwithstanding, by means of such a conversation as this, in which he should think fit to ad-

mit a prior debt, so produce that very effect indirectly, by an acknowledgment of the existence of such a debt, made at a period when he could not otherwise affect or change his estate by any one direct *act* of his own. That would be holding that he might still do, in effect, by an easy device, the very thing which the policy of the law disallows, by disabling him from doing so by any direct means." It was said by one of the Barons, in this case, " if these declarations are to be admitted in evidence, and if conversations are to be received to establish debts due from a bankrupt, in such a case, at a time when he has no interest in his property, he may, by declarations of this sort, create liabilities to the extent of the whole of his estate, in respect of individuals who may have no legal demand on him." It was held by the court of exchequer, that declarations made by a bankrupt, after the act of bankruptcy, but before the issuing of the commission, are not admissible in evidence to prove the petitioning creditor's debt. This is now an established rule of evidence.

The boat, in this case before us, had gone into bankruptcy. She was in the hands of the officers of the law. The court had ordered the sale of the boat ; the creditors were notified to appear and exhibit and prove their claims. She was not any longer in the custody of the owner. After the order of sale, the owner had no power to bind the boat by his admissions, and such admissions should not have been received in evidence. It makes no difference that the answer of Langhorne was signed and sworn to before the sale of the boat ; it was after its seizure, and after the order of sale, and at the time when offered by Renshaw to prove his claim, was nothing more than hearsay evidence. This answer should have been rejected.

The judgment below is reversed, and the cause remanded, the other judges concurring.