THOMAS BOYLAN AND WILLIAM P. GETTYS, Respondents, v. THE STEAMBOAT VICTORY, Appellant.

1. *Courts — Jurisdiction — Boats and Vessels.* — A contract made at the home port of a boat or vessel with the master or owner for supplies furnished to such vessel, is a land contract made and completed within the body of a county, and the courts of this State have jurisdiction to enforce such contract against the boat or vessel by subjecting it to sale as provided by the statute—Gen. Stat. 1865, ch. 193. Such a contract is not within the exclusive jurisdiction of the admiralty.

2. *Boats and Vessels — Limitations — Accounts.*—Where it is specially agreed or impliedly understood between the parties that an account is to be kept open and continued as one account, the limitations will commence to run from the last item of the account.

3. *Boats and Vessels—Evidence—Admissions.*—The admissions of an owner are admissible in evidence in a suit against the boat.

*Appeal from St. Louis Circuit Court.*

This is a suit brought for supplies furnished. The petition was filed on the 29th January, 1866. The date of the

first item of the account was August 30, 1864—for cash advances to the owner for buying stores and supplies for the boat, $500. The account then ran through September, October, and up to November 24, 1864, including an item of the date of November 12, of $1,500, for cash advanced to the owner for the purpose of buying stores and supplies for the boat. The next item was of date May 8, 1865, with various items running through May, June, July, August, September and October, 1865—the account closing October 17, 1865— the demand consisting entirely of charges on one side, with no credits from August, 1864, to August, 1865.

Joseph Gray, one of the owners of the boat, filed an answer to the petition, denying any lien on the boat for any portion of the account prior to May 8, 1865; and averring that a portion of the account after the 8th of May had been paid, leaving only about $400 or $500 of the account due; and that Gray, Springer & Dozier purchased the boat long after the dates of any of the items in the account, and that they were not the owners at the time any of the supplies were furnished.

Upon the trial, the court (sitting as a jury) found for the plaintiffs the sum of $4,414.49.

Capt. T. P. Perkins, who was half owner of the boat during the whole period covered by the account, and was managing owner and financial agent of the boat, gave his two due bills for the cash "advanced" to the boat, one for $500, the other for $1,500; and stated in his testimony that the money was borrowed to pay off the crew of the boat for wages already due, and to purchase supplies.

It appeared from the testimony that the boat left St. Louis in the fall of 1864, and was engaged in the southern trade until the spring of 1865, and did not visit the port of St. Louis during the interval, about five months. It further appeared that a separate account of the items furnished for each trip of the boat was made out and presented for payment at the end of each trip. The two due bills referred to were read in evidence as follows:

"$500. Due Boylan & Gettys five hundred dollars, cash borrowed for acc't steamer Victory. St. Louis, August 20, 1864.—T. P. Perkins, owner."

"$1,500. Due Boylan & Gettys fifteen hundred dollars, cash borrowed on acc't steamer Victory. St. Louis, November 12, 1864.—T. P. Perkins, owner."

Plaintiffs offered in evidence the following paper, to-wit:

"The money advanced by Boylan & Gettys on the 26th of August, 1864, five hundred dollars, and on the 12th of November, 1864, fifteen hundred dollars, to the steamboat Victory, at St. Louis, was advanced by them and received by the boat for the express purpose of purchasing stores and supplies, fuel, and paying the necessary accruing expenses of the immediate trips after said advancements and said money were so appropriated.—T. P. Perkins."

It appeared from the testimony that it was executed after Perkins had sold the boat; he did not know the purport of the note when he signed it, but was told by one of the plaintiffs that it was paper putting both due bills into one.

Defendant objected to the introduction of the paper as incompetent evidence to show any lien on the boat. The court overruled the objection and admitted the paper in evidence, to which defendant excepted.

Upon the trial, the defendant asked the court to give the following instructions, which were given:

1. If the money was loaned to T. P. Perkins, then it devolves on plaintiffs to prove to the satisfaction of the court that it was loaned for the purpose of purchasing or procuring supplies, or labor to be done or furnished for the boat.

2. If the money was loaned for the purpose of paying wages due to the crew of said boat, or any other debt or liability of said boat or its owners, then there is no lien on the boat therefor, and the onus is upon plaintiffs to prove to the satisfaction of the court the facts necessary to create a lien on the boat for said money.

Defendant also asked the following instructions, which were refused :

3. If the court finds from the evidence that the boat left St. Louis on or about the 24th day of November, 1864, and from that time until May, 1865, there were no purchases for said boat, and no dealings or transactions between plaintiffs and said boat, or any one on its behalf, then, unless there was a contract or understanding that there should be other dealings or transactions with plaintiffs for said boat, or the account was not kept open by request on its behalf, there is no lien for any of the items in the account of date of said 24th of November, 1864, or prior thereto.

4. The items in the plaintiffs' account which accrued on and before the 24th day of November, 1864, are no lien on the boat, unless at the time the items were furnished on said 24th of November, it was agreed or understood between the parties that the plaintiffs should subsequently furnish supplies to defendant, and that the account was agreed to be kept open for the purpose of adding such subsequent purchases to it.

The court then, of its own motion, gave the following instruction :

"If there were no dealings or transactions between plaintiffs and the boat, or any one on its behalf, from the 24th day of November, 1864, until in May, 1865, and there was no contract or understanding or expectation that there would be any other such dealings or transactions, then there is no lien on the boat for any of the items in the account of 24th of November, 1865, or prior thereto."

The giving of which was excepted to by defendant.

*Sharp & Broadhead*, for appellant.

The true rule is held to be, that where there are mutual charges and transactions, reciprocal demands between the parties, so that it is uncertain on which side the balance will fall, as it is constantly fluctuating, then each item of the other party is an admission, an implied agreement for the

continuance of the account; it is this agreement implied which constitutes mutual accounts, in which the last item in the mutual current form draws with it the prior current items and prevents the statute running against them. If, however, the account is wholly on one side, charges of one only against the other, this doctrine does not and cannot apply, and only such bills can be enforced as are in point of time within the period limited.—Ang. on Lim. 130–5, 139, § 8; Kimball et als. v. Brown, 7 Wend. 322, and cases cited; 5 Johns. Ch. 524.

II. That the subject matter of this suit, the furnishing of supplies to a vessel, is a maritime contract, and a cause of general admiralty jurisdiction, there can be no question, and as such it is within the peculiar jurisdiction of an admiralty court; ("Gen. Smith," 14 Wheat. 443; De Lovio v. Boit, 2 Gal. 398–406; 2 Pars. Mar. Law, 511;) and to enforce a right under such a contract the party could always proceed in an admiralty court either *in rem* or *in personam*—"Orleans," 11 Pet. 184.

If the supplies were furnished at the home port, neither in England nor in this country (except in certain cases) could the proceeding be *in rem*, but *in personam* only; but the contract was nevertheless a maritime contract. But could the State courts here, or the courts of common law in England proceed *in rem?* The admiralty proceeding *in rem* is peculiar to admiralty courts.

The proceeding under the boat law is a proceeding *in rem*, in a case clearly of admiralty jurisdiction. " The proceedings *in rem* against the ship itself is the proper and peculiar province of the Court of Admiralty. The jurisdiction of the courts of common law is expressed by suits against the person"—Abb. Ship. 162–3; Ben. Ad. § 362. This proceeding *in rem* is a proceeding against the property, and everybody interested in the property may become a party to the proceeding—Ib. § 364. No such proceeding is known at common law.

If the State courts can resort to an admiralty proceeding

in a maritime case, then the State courts can oust the jurisdiction of the Federal courts in all cases of admiralty jurisdiction, which, by the Constitution and acts of Congress, are within the peculiar and exclusive jurisdiction of the Federal judiciary.

As to what is a common law remedy under the act of 1789, Judge Wells, in the case of Ashbrook et als. v. Golden Gate, says: "In my judgment, it can be only common law actions—actions of debt, assumpsit, case of trespass, trover, &c., as practised at common law; such are the only common law remedies then, or indeed now kuown. A proceeding *in rem* is unknown as a common law remedy"—Newb. Ad. 305.

*Rankin & Hayden*, for respondent.

In the present case, the admiralty had no jurisdiction. The boat was a home boat, and Perkins, the owner, as he himself testifies, had ample credit; he testifies particularly to his credit and ability to pay. Now, it has been settled by a long line of decisions, not only of the District and Circuit courts, but of the United States Supreme Court, that there is no right to proceed in admiralty where the supplies or materials are furnished in the home port of the vessel— Abb. on Ship. 142–4, and Am. notes; 1 Pars. on Mar. Law, 489–90. By the decisions it is indispensable, in order to give admiralty jurisdiction in a case of supplies or materials furnished to a boat, that, 1. The boat should be a boat foreign to the port where the supplies are furnished; 2. That these supplies were necessarily furnished on the credit of the boat—the master, owner, agent, &c., having no credit and no ability to procure money and supplies except on the credit of the vessel.

In order to prove a maritime lien and give the admiralty jurisdiction, the plaintiff must show, 1. That supplies were furnished to a foreign vessel; 2. That there was no personal credit given, no owner that could be resorted to, no party whatever on the boat's part with funds or means that could

be resorted to—Ship Potomac, 2 Black, 581; Str. St. Law-rence, 1 Black, 522; Maguire v. Card, 21 How. 248; Todd v. St. Bt. Sultana, 19 How. 362; Pratt et al. v. Reed, 19 How. 359.

Now it cannot be claimed that in the "Adam Hines" case the Supreme Court decides anything more than that where a cause of action exists in the Admiralty courts of the United States and the party has a remedy there, there is no concurrent remedy against the boat in the State courts, and the boat laws, so far as they afford a concurrent remedy, are unconstitutional. And it should be observed that the Su-preme Court has always, in respect to jurisdiction, distin-. guished cases of maritime torts from cases of contract, placing the jurisdiction in cases of tort on grounds peculiar to themselves.—Warring v. Clark, 5 How. 452; Genesee Chieftain, 12 How. 443; Magnolia, 20 How. 289; P. & W. R.R. Co. v. Phil. & Hav. Towboat Co., 23 How. 215; Pro-peller Commerce, 1 Black, 574.

It has been decided that by the law of the United States, in admiralty, the builder's contract " is not a maritime con-tract;" that "though in countries governed by the civil law, courts of admiralty may have taken jurisdiction of such contracts, yet in this country they are "purely local and governed by State laws, and should be enforced by their own tribunals"—Morewood v. Enequist, 23 How. 491; People's Ferry Co. v. Brown, 20 How. 401.

HOLMES, Judge, delivered the opinion of the court.

The suit is founded upon an account for items of stores and supplies, and of money furnished to purchase stores and supplies, upon a special request for that specific purpose; and the account ran from the 20th of August, 1864, to the 8th day of May, 1865, with an interval of less than six months between November, 1864, and May, 1865, the boat being absent during the winter. There was evidence tend-ing to show that all the items of the account were for stores and supplies, and were a lien upon the boat under the stat-

ute, and that it was one continuous running account in a regular course of dealing between the parties; and it further appeared that when the bills were presented for payment, in the fall of 1864, the owner or agent requested further indulgence, and the account was continued and the course of dealing renewed in the spring, when the boat again commenced running from this port.

It has been argued that this was not a mutual open account. The statute requires only that the suit shall be commenced within six months "after the true date of the last item in the account upon which the action is founded." The action is based upon the statute, which does not require a mutual account, but supposes that the items may be all on one side of the account. The limitation is to be reckoned from the date of the last item, and it matters not that some of the earlier items may bear date before that time; but it is supposed that there is but one account and one demand, and not several separate and distinct demands—Carson v. St. Bt. Hillman, 16 Mo. 256. Where it is specially agreed or impliedly understood between the parties that the account is to be kept open and continued as one, and the same continuous transaction and course of dealing, the account will be considered as one continuous account and one demand— Madison Co. Coal Co. v. St. Bt. Colona, 36 Mo. 446. There was evidence before the court from which it might reasonably be inferred that such had been the understanding of the parties and the real nature of the transaction in this case, and the verdict will not be disturbed on this ground.

As to the admission of the paper signed by the captain and owner, to which exception was taken, it is unnecessary to say more than that the testimony was conflicting as to the time when it was signed, and that there was ample evidence, otherwise, to establish the account and the lien. If it were signed while the party was still an owner, it was certainly admissible—Phillips v. St. Bt. Eureka, 14 Mo. 532.

If it had been signed after he ceased to be an owner, or after the beat had been seized and ordered to be sold, it

would not be admissible—Renshaw v. St. Bt. Pawnee, 19 Mo. 532. But the demand was fully proved by the testimony and by the due bills which were given for the moneys advanced, and the judgment would not be reversed for the reason that this paper was admitted in evidence, even if there were room for doubt as to its admissibility.

On the question of jurisdiction, the case comes within the decision in the case of Cavender et al. v. St. Bt. Fanny Barker, decided at this term. The demand consists of stores and supplies furnished to the boat at the instance of the captain and owner, while lying in this port. It appeared that the boat belonged to this port and that the owners were resident here. The contract was made within the body of the county ; and the parties and the boat itself were within the territorial jurisdiction of this State. This was a land contract, though relating to a vessel, and not a maritime contract within the exclusive jurisdiction of the admiralty ; unless it were to be held that all contracts relating to a boat or vessel must necessarily be maritime—2 Pars. on Mar. Law, 512. Marine contracts, of which the admiralty has cognizance, have been defined to be " contracts made on the sea, whose consideration is maritime, and not ratified by deed nor under seal." And it has been laid down by high authority that " no person can sue in the admiralty for work and labor done in port before the voyage begins, or for necessaries sold for the ship's use before she sails "—2 Brown's Civ. & Adm. Law, 72–80 ; Ross v. Walker, 2 Wils. 264 ; Wilkinson v. Barnardiston, 2 P. Will. 367. "Admiralty causes," says Blackstone, " are those arising wholly upon the sea, and not within the precincts of any county "—3 Black. Com. 106. It may be otherwise in a case of a boat or vessel needing repairs or supplies in a foreign port, where the owners do not reside, or are absent, where the contract must operate solely *in rem*, and where a lien is given in the admiralty—3 Kent's Com. (7th ed.) 214, 218. In such case the jurisdiction *in rem* may be exclusive in the admiralty, but here the contract is not maritime, and the jurisdiction *in rem* is given by the

statute against this vessel in her home port, where the owners are resident, and upon contracts made and to be performed within the body of the county, where no lien exists in the admiralty (3 Kent 214, 218), and the whole matter arises within the territorial jurisdiction of this State. It is held by the courts of common law that the admiralty jurisdiction is confined to contracts made upon the high sea, to be executed upon the high sea, of matters in their own nature maritime—De Lovio v. Boit, 2 Gall. 437. In this case Mr. Justice Story includes among "maritime contracts," coming within the recognizance of "all civil causes of admiralty and maritime jurisdiction," contracts for "maritime services in the building, repairing, supplying and navigating ships," and "policies of insurance," which (he admits) are not *exclusively* within the admiralty and maritime jurisdiction of the United States—Ibid. p. 475–6. We conclude that this contract for stores and supplies was not within the *exclusive* jurisdiction of the admiralty—1 Conkl. U. S. Adm. 14–15; 1 Kent's Com. (7th ed.) 404–407; the Santiago de Cuba, 9 Wheat. 409; Ramsey v. Allegre, 12 Wheat. 611.

According to the views above expressed, the court committed no error in the giving or refusing instructions. The evidence sustained the verdict, and the judgment will be affirmed. The other judges concur.