### BECKWITH, Adm'r. &c. vs. BOYCE.

Sheds erected upon posts set in the ground by a tenant, for the purpose of making brick, are fixtures: and although they may be liable to be removed by the tenant during the lease, upon the termination of the lease vest in the landlord.

### ERROR to St. Louis Circuit Court.

Bogy, for Plaintiff in error.

#### POINTS.

1. During the term, the lessee may remove fixtures set up for trade, but after the term they become a gift in law to him in reversion, and are not removeable. Poole's case, 1 Salkeld 368; Holmes vs. Tremper, 20 John. Rep. 29; 2 Kent's Com. 544 and 345; Lyde vs. Russell, 1 B & A, 394; 20 vol. Com. Law Rep. 407.

2. Unless the lessee uses his privilege during the term to sever them, he cannot afterwards do it. Lee vs. Risdon, 7 Taunt. 188; Colgroves vs. Dios Santos, 2 B. and Cress. 86; Gibbons on the law of Fixtures, 13 Law Library 22.

3. The tenant's right is considered as a privilege which must be exerted before the expiration of his interests in the land, and if not exerted then it cannot be afterwards. Gibbons on the Law of Fixtures, (13 Law Library) 38, 39, 40, 41, 42.

4. The first instruction given by the court is not correct, because it is ambiguous, and contains two propositions, viz: The giving up of the premises by the lessee, and the actual possession taken by the lessor.

5. An actual possession is not necessary to vest in the lessor all his rights, &c., the expiration of the term, and the abandonment of the property by the lessee is sufficient.

6. The second instruction is also wrong; it assumed the fact that the action of trover would lie if the facts were of a certain character. This instruction is calculated to mislead the jury, and is not true in point of law. See the case of Lyde vs. Russell, 1 Barn & Ald. 394, (20 vol. English Com. Law Rep. 107.)

7. The premises had been abandoned by the lessees for several months before the judgment was recovered against them by Boyce. Could Boyce or the lessess go on the premises a long time after the possession of it had thus been given up, to take the fixtures?

8. From the memorandum at the foot of the lease, it appeared to have been the intention or contract of the parties, that all the erections on the property leased should not be removed until the rent was paid. In this case it appears that the rent was not paid.

9. The landlord is entitled to a lien on all the improvements on the premises, as a security for the rent.

Polk, for Defendant in error.

POINTS AND AUTHORITIES.

1. The property for which this action was brought, was not what can properly be called fixtures, but strictly *personal chattels;* Gibbon's Law of Fixtures, 15; 19 Law Library; 17 John. R. 116; 7 Cow. 319; 1 Metcalf 27.

2. The instructions given by the court below, are not erroneous in point of law, as applicable to the facts of this case. 20 John. R. 29; 5 Pick. R. 487; 2 East. 88 *a.*

3. The judgment of the court below ought not to be reversed, for the refusal of that court to give the instructions prayed by defendant's counsel. 20 John. R. 29; 3 East. 38; 2 do. 88 *a.*

4. The counsel for the defendant in error, also maintains that the court below was right in overruling defendant's motion for a new trial.

Napton, J., delivered the opinion of the court.

This was an action of trover brought by Boyce, to recover damages

for the alledged conversion of a quantity of lumber by Smith, the intestate of Beckwith. The plaintiff had a verdict and judgment in the circuit court.

The plaintiff claimed the lumber under a bill of sale from the sheriff of St. Louis county, who had levied on it, and sold it under two executions issued against Dickinson & Holmes. The lumber, at the time of the levy and sale, consisted of two sheds, erected on a lot belonging to Smith, the largest of which was for the purpose of making brick,—the other for drying them. They were standing at the time of the sale, the posts which supported them being stuck in the ground. Smith, the intestate, had leased this lot to Dickinson & Holmes, for one year from 1st March, 1840, who occupied the same for some time, making brick thereon with a new patent brick-making machine, but abandoned the premises sometime in the fall or winter of 1840. The sale of the sheriff was in July, 1841 ; at the time of the sale, Smith was present on the lot, and notified all present not to buy, as he would not let a single foot of it be taken away. The rent of the lot, it appeared, was due to said Smith; and the lease from Smith to Dickinson was given in evidence, in which, after the signature of Dickinson, were the words, "If the above contract is not fulfilled, the fixtures are not to be removed."

The court gave the jury two instructions :

1. If the jury believe from the evidence, that any part of the property, for the conversion of which this action is brought, was erected on the land of the defendant's intestate, as a fixture or fixtures, for the purposes of trade by Dickinson and Holmes, such fixtures could not be removed from the freehold of the defendant's intestate, after the expiration of the term under which Dickinson and Holmes held, unless such fixtures were removed before D. & H. had left possession of the said freehold, or before the defendant's intestate had actually re-entered upon the same.

2. If the jury believe, from the evidence, that the property for which this suit was brought, constituted erections, and apparatus set up by Horace B. Dickinson, for the purpose of carrying on the trade of manufacturing brick, and that said Dickinson was the lessee of defendant, Smith, of the premises upon which the same was set up for the purpose of manufacturing brick, then the action of trover will lie for said property.

The first question, and indeed the principal one presented by this record is, whether the sheds erected by Dickinson and Holmes, for the purpose of carrying on the manufacture of brick, were *fixtures*. Fixtures are defined to be "chattels or articles of a personal nature which

Beckwith, Adm'r, &c. vs. Boyce.

have been affixed to the land." Toml. Law Dict. Tit. Fixtures. The definition given by Bacon is, that it is "a thing personal in its nature, but appended to the inheritance, or affixed thereto, so that its separation therefrom would injure or prejudice the inheritance." 3 Bacon 63, Philipson vs. Mullanphy, 1 M. R. 623. It would be both tedious and unprofitable to review the cases, whether English or American, which have attempted to establish what is a fixture and what is not. Judge Cowen, in a learned opinion, delivered in the case of Walker vs. Sherman, has collated them, and the only inference which can be drawn from them is, that each case turned upon its peculiar circumstances, and no general rule was, or could be extracted from them. It is observable, however, that these cases have usually arisen, and all the difficulties have been started, where manufacturing machinery of some sort has been connected with a building. I have seen no case in which the *building* itself, whether temporary or permanent, whether of wood or brick, whether set up on blocks, or supported by posts let into the ground, has not been regarded at least as a fixture. Whether it was a fixture which could be removed by the tenant, whether it would go to the heir or executor; and whether it would pass to the vendee of the land, are questions which have been discussed in a variety of cases, without settling any very satisfactory rule for their solution. But the sheds spoken of by the witnesses in the present case, were not a portion of a manufacturing machine; they were merely constructed for the protection of manufacturing implements from the weather, and were no more a part of the machinery itself, than if they had been permanent and well constructed houses. If the sheds were for the purposes of sheltering this manufacturing machinery, and rested upon posts placed in the ground, were they not fixtures erected for manufacturing purposes?

In Horn vs. Baker, (9 East. 215) it was not doubted but that distiller's vat, supported upon brick work and timber, but not let into the ground, and vats standing on horses or frames of wood, were goods and chattel; but it was held that stills set in brick work and let into the ground were fixtures.

The first instruction given by the circuit court, leaves to the jury the determination of this embarrassing question, and the jury are told that if, in their opinion, the property sued for was a *fixture*, then it could not be removed after the termination of the lease, or at least, after the lessor had resumed possession. Admittitting that the jury were competent to decide whether the property sued for was a fixture or not, without any information from the court as to what made personal pro-

perty fixtures, the jury might still have been somewhat embarrassed to determine in what way that finding would affect the merits of the case. Notwithstanding they believed the property to be fixtures, and notwithstanding they believed these fixtures had not been removed during the tenancy, they may have felt themselves at liberty to infer, as Judge Spencer declared the law to be in Holmes vs. Tremper (20 J. R. 28,) that though the tenant would commit a trespass in removing the property after his term had expired, yet the property remained unchánged, and trover would still lie. This may have been the opinion of the circuit court, and the second instruction seems to countenance this idea. But we have rather conjectured that it was the intention of the first instruction to convey to the jury the idea that if the property was a fixture, the action could not be sustained, provided the jury should find that it had not been removed previous to the re-entry of the lessor. The instruction, if so understood, so far as it goes, is unquestionably the law, but it leaves the jury without any guide to assist them in determining whether the property was a fixture or not. In this point of view it is objectionable.

The second instruction seems to intimate the law to be, that if the property sued for consisted of erections for manufacturing purposes, the plaintiff was entitled to recover. This must have been upon the assumption, that if the property was placed there for manufacturing purposes solely, it was no fixture, and therefore liable to be levied on as the personal chattels of Dickinson & Holmes. It is true that fixtures erected for manufacturing purposes have been regarded somewhat differently from those erected for agricultural purposes. In Elwes vs. Man, (3 East. 38) Lord Ellenborough considered erections for agricultural purposes, such as beast houses, folds, cart houses, &c., as not removable by the tenant even during the term. When the building is erected as a mere accessory to a personal chattel, it may be removed; but when it is accessory to the realty, it cannot. The latter are not regarded as fixtures at all. The English and American cases are uniformly hostile to the idea of mere loose moveable machinery, even where it is the main agent in prosecuting the business to which a freehold property is adapted, being considered as a part of that freehold for any purpose. "To make it a fixture," says Judge Cowen, in Walker vs. Therman, "it must not only be essential to the business of its erection, but it must be attached to it in some way; at least, it must be mechanically fitted, so as in ordinary understanding, to make a part of the building itself."

The law applicable to the case now under consideration was correct-

ly stated in the first instruction given by the circuit court. That instruction, if understood as we have heretofore supposed it should be, is supported by the authorities. Poole's case, 1 Salk. 368; Lyde vs. Russell, 1 B. & A. 394. The property or fixtures which would be in the tenant during the term, vests in the landlord on the determination of the term, upon the legal presumption that they are voluntarily relinquished in favor of the landlord. Was not the presumption in the present case, greatly strengthened by a lapse of four months after the expiration of the term, and more than that since the lessees had abandoned the possession, especially when it appeared that rent was due, and there was proof of an agreement that the fixtures should be left for that purpose? It may be said that the evidence showing these facts was not legal. How that may be does not appear; but the record shows that such evidence was before the jury who tried the case, without objections, and whether properly before them or not, was not the mere fact of leaving the property on the premises, after the termination of the lease, evidence of a design to abandon it to the landlord in payment of the rent?

Judgment reversed and cause remanded.