PATRICK B. RING, Respondent, v. WILLIAM C. JAMISON, Administrator of PETER LINDELL, Appellant.

July 3, 1876.

1. The contract of an infant may be ratified by an oral promise, made after he comes of age, to pay the debt.

2. It is not necessary that the person ratifying his contract, made as an infant, should know that he is not legally bound at the time he makes the new promise.

3. Every new item in a running open account draws with it all preceding items, and is a recognition of the balance due, whether the account be mutual or not.

4. Counsel may sometimes ask a witness a question the answer to which may degrade him, but it is in the discretion of the court to require an answer. The court may also, under certain circumstances, forbid such questions to be asked.

5. A party may testify in his own behalf as to matter not directly relating to the contract in issue, even though the other party to the contract be dead.

6. In a suit against an administrator, where the administrator himself is present defending during the trial, and waived notice of demand in the Probate Court, it is too late after verdict to object that no formal proof that he was administrator was made.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*Cline, Jamison & Day,* for appellant, cited: 1 Greenl. on Ev. (7th ed.) 596–597, secs. 458, 459; 1 Wag. Stat. 120, sec. 8; Coughlin *v.* Haeussler, 50 Mo. 128; McLean *v.* Thorp, 3 Mo. 215; Poe *v.* Domic *et al.*, 54 Mo. 124; Stanton *v.* Ryan, 41 Mo. 510; Baker *v.* Kennett, 54 Mo. 92; Ford *v.* Phillips, 1 Pick. 202; Smith *v.* Mayo, 9 Mass. 64; Curtin *v.* Patton, 11 Serg. & R. 307; Hinsby *v.* Margarity, 3 Barr, 428.

*Matthew O'Reilly,* for respondent, cited: Greenl. on Ev., sec. 457; Poe *et al. v.* Domic *et al.*, 54 Mo. 124; Looker *v.* Davis *et al.*, 47 Mo. 143; Highley *v.* Barron, 40 Mo. 106; Stiles *v.* Smith, 55 Mo. 363.

BAKEWELL, J., delivered the opinion of the court.

This was a suit originally instituted in the Probate Court of St. Louis county, against the estate of Peter Lindell, deceased, for money loaned to defendants' intestate, money paid out for him, and articles of jewelry sold to him from time to time, from February 10, 1868, to August 3, 1871, making an aggregate of $7,727.75. There were no credits. Judgment was for defendant in the Probate Court. In the Circuit Court a trial was had before a jury, and verdict and judgment for the plaintiff for $7,707.25.

Peter Lindell became of age on October 10, 1870. Defendant, Jamison, was his curator, and supplied him with all necessaries during his minority. Lindell appears to have been a young man of expensive habits, and the evidence for plaintiff is the testimony of the associates of Lindell and ministers to his pleasures, and of his servants. It

appears that he was rich, and there is testimony that he was liberal of his money, and rather made a point of paying his racing and gambling debts. In appears also that plaintiff had, at times, control of large amounts of money. The deceased seems to have been often embarrassed for ready money. One witness, a bar-keeper, testifies to Lindell going over the items of this account with plaintiff, after Lindell obtained his majority, recognizing its correctness, adding it up; that Ring then made a pencil note of the sum total on a card, or in the memorandum book in which the account was kept, and that Lindell promised to pay it. On the other hand, there was evidence of deceased, on one occasion, giving to plaintiff a large sum of money, at his request, declaring at the same time, with great vehemence, that plaintiff must in future look elsewhere for money, for he would furnish him no more. The mother of deceased swore that plaintiff admitted to her, after the death of her son, that he owed deceased $700, and proposed to her that they should trump up this claim against his estate and divide the amount allowed. In short, the evidence was contradictory, and cannot be reconciled.

The court gave the following instruction at the instance of plaintiff:

" If the jury believe from the evidence that, on or about 23rd April, 1872, Patrick B. Ring and Peter Lindell had an accounting and a settlement between them of the money advanced or loaned by Ring to Lindell at sundry times prior to said date; and that at the said settlement it was found that said Lindell admitted that he was indebted to Ring in the aggregate amount of the several sums taken into account in said settlement, as set forth in the settlement thereof filed in the cause, amounting in the aggregate to the sum of $7,727.25; and that said Lindell promised to pay said sum to said Ring; and that, at the time of making said promise, said Lindell was over the age of 21 years, then the jury will find for the plaintiff so much of said

money as they may believe from the evidence is still due to said Ring, with interest thereon, at the rate of 6 per cent. per annum, from the time said Lindell promised to pay the same."

To the giving of this instruction defendants excepted.

The following instruction was given at the instance of defendants:

"If the jury believe from the evidence that Patrick B. Ring, the plaintiff, owed Peter Lindell at the time of his death, they will find for the defendants."

And the following instructions were asked by defendants, and refused:

1. "The acknowledgment of indebtedness by Peter Lindell after he became of age, believing himself liable to pay the same, is not a ratification of the account sued upon; and, if the account sued upon accrued whilst Peter Lindell was a minor, under the age of twenty-one years, the jury will find a verdict for defendants."

2. "If any of the items of the account sued upon accrued more than five years prior to the commencement of this suit, then the plaintiff is not entitled to recover for such items."

3. "If the curator of Peter Lindell supplied him with all necessaries while he was a minor, and that the account sued upon accrued while Peter Lindell was a minor, then the plaintiff cannot recover."

"If the jury believe from the evidence that the curator of Peter Lindell supplied him with all necessaries while he was a minor, and that the plaintiff loaned him money, or sold him diamonds or other property, as mentioned in the account sued upon, while he was a minor, then the said plaintiff cannot recover on the same."

To the refusal of the court to give any of these instructions defendant duly excepted, and in due time filed his motion for a new trial, which being overruled, the cause is brought before us by appeal.

1. We see no error in the instruction given for plaintiff.

An infant may avoid his contract, if not for necessaries; but he may also ratify it, and he may do this by word only. A mere acknowledgment that the debt is due is not enough; but a promise, expressed or implied, makes him liable. In the case at bar there was sufficient evidence of an express promise to warrant the instruction. There is no pretense that the promise was extorted or conditional.

2. The first instruction refused to defendant was properly refused, because, though it is true that a mere naked acknowledgment of indebtedness would not alone amount to a ratification, the instruction, as worded, was calculated to mislead. It was not necessary, to make the ratification valid, that Lindell should know, at the time of promising to pay the debt contracted when an infant, that he was not legally liable for it. If he knew all the facts, that is sufficient; ignorance of the law should not shield an adult in this more than in any other case.

3. The second instruction was properly refused, because the account was a running account, and would not be barred until the last item was barred. It is true that the account was not mutual, having no credits; but it seems to be held in Missouri, whatever may be the rule in some other States, that every new item in a running account draws after it all preceding items, and is a recognition of the balance when it shall be struck.

It is true that, in *Penn* v. *Watson*, 20 Mo. 16, there were mutual accounts and a set-off; but the question has been repeatedly brought before our Supreme Court in matters growing out of accounts under the mechanics' lien law, and the law of boats and vessels, where an entire running account has been brought within the operation of the lien by the later items.

*Stine* v. *Austin*, 9 Mo. 558, was a case in which it was maintained that the plaintiff, a mechanic, was entitled to recover only so much of the account as accrued within six months before filing the lien. But the court held that, as a

running account, it constituted but one demand, which accrued only when the last item was furnished.

The difference between a running account and one that does not run is that, in the latter, each item is a separate cause of action in itself. The minds of the parties are presumed to have concurred only as to the single transaction. But, in the case of a running account, according to the doctrine of relation, the subsequent acts relate back each to the preceding act, and all the original acts. The account sued on embraces forty-seven items, running through, and pretty evenly distributed through, about forty months, from February, 1868, to August, 1871. The items seem to have been jotted down in a memorandum book, carried on his person, by Ring, and, after the last item accrued, were added up by Lindell and Ring together, the amount agreed to, and marked by Ring, in Lindell's presence, in pencil on the memorandum book or on a card. The account seems to have been kept open at the instance of Lindell. Where it is specially agreed, or impliedly understood, between the parties that the account is to be kept open and continued as one and the same continuous transaction and course of dealing, the account is considered, in this State, as one continuous account and one demand.

It may be said that the Missouri cases in which it has been so held (12 Mo. 477 ; 16 Mo. 266 ; 36 Mo. 446 ; and 40 Mo. 244) were decided in actions based upon a statute which requires that the suit shall be commenced within nine months after the " true date of the last item in the account upon which the action is founded ;" and that the statute says nothing of the mutuality of the account, and may be said to suppose that the items may be all on one side. The statute as to boats and vessels, it is true, says nothing of the mutuality of the account ; but *Stine* v. *Austin*, quoted above, was decided under the mechanics' lien law of 1835, which, like our present statute on the subject, contemplates an account on which all just credits are given.

In *Finney* v. *Brant*, 19 Mo. 45, it appears from the statement of the case that Finney paid out moneys for Brant under the following circumstances : Brant and many others, about twenty-five in all, entered into an agreement appointing certain of their number a committee to employ counsel and conduct the defense of certain suits involving the title to land in which all the contracting parties had an interest. The parties to the agreement were to pay to this committee, or their successors, such amounts as might be assessed from time to time to defray the expenses of the defense, in proportion of the value of their several interests. Several counsel were employed to defend the two suits already brought, at a fee of $2,000 to each of four legal firms, one-half in six months, and the remainder on the final determination of either of the suits. An assessment was made against each of the signers of the agreement for his proportionate share of the counsel fees, and a draft drawn by the committee in favor of each of the counsel upon each of the parties to the agreement, payable in installments as the fees became due. Brant refused to accept the draft drawn on him for his share of the counsel fees ; and his share was paid by the several members of the committee, each member paying separate sums at different times. Finney brought suit, in 1853, to recover the amount thus paid by him for Brant. Some of the payments were made by Finney in 1846, and others in 1852, as they became due by the terms of the draft and of the agreement under which counsel were employed. Amongst other defenses set up by Brant was the statute of limitations. But the Supreme Court held that these payments were a running account, and that the last item brought the whole within the statutory time. The authority of this case, which seems precisely in point, is unshaken, we believe, by subsequent decisions, and is binding upon us.

There can be no question that the weight of authority in other States is in favor of the view that a running account

must be a mutual account, and that, in order that entries on one side or the other should take the older items out of the statute, there must be mutual dealings and items on both sides. This is the rule in Maine, Massachusetts, New York, New Jersey, Pennsylvania, Indiana, Texas, and perhaps in other States. But, as has been shown, there is a different rule in Missouri. In this State—where the account sued on is a running account, kept open by agreement, express or implied, between the parties, constituting really one bill composed of separate items, morally connected one with another, so that it is clear that each separate item is not meant to constitute a new and independent contract—each new item draws the preceding items to itself, whether the account contain credits or counter-charges, and is a mutual one, or not. Such entries constitute an account in an improper sense, and in the sense in which the word is sometimes used, as in the mechanics' lien law, though not containing a detailed statement of mutual debts and credits.

4. During the progress of the cause defendant's counsel asked a witness whether he had been arrested for larceny. The question was excluded. Whether the witness could have been compelled to answer the question is a point on which, in the absence of express authority, opinions have been very much divided. The better rule seems to be that the witness cannot be compelled to answer a question the answer to which will tend to degrade him; though it must be admitted that grave modern authorities point in favor of compelling an answer, which, when given, cannot, however, be contradicted. The matter of compelling an answer must be left, we think, to the sound discretion of the court. But the question here is, may the question be asked? And, if that be decided in the affirmative, the doubt as to whether it must be answered seems comparatively unimportant, as the object of cross-examining counsel is sufficiently attained by putting such a question, when silence is tantamount to confession, and produces ordinarily the desired effect of

discrediting the witness of whom the disgraceful fact is known or believed by counsel to be true. It seems to be settled that the question may be asked, but the rule is not absolute, for it is said that the court has a discretion so far as this: that it may prevent the recalling in this manner of discreditable circumstances of a date long past, and that it is not the policy of the law to allow the character of men, who have rehabilitated themselves by a course of steady conduct, to be smirched by throwing up to them in court the follies of their youth. We have no doubt that even here the court has a discretion, and may protect a citizen of good fame against the insult of such questions, if directed to remote occurrences. Whilst, then, we think that the question, under the circumstances of this case, ought certainly to have been allowed, we will not establish a precedent that such questions may, under all circumstances, be asked.

But, if it was error to refuse to allow the question to be put, under the circumstances of this case, was this such error as to prejudice defendant, and warrant a reversal of the case? We do not think it was. The question was excluded by the court. But it was, in fact, put in the presence of the jury. The effect, to a considerable extent, must have been produced; for it is quite evident that a man who had not been arrested for larceny would have answered "no" before an objection could be made; or, if too slow-witted for that, would have asked the court, out of regard to his character, to allow an answer to be made. So far as this witness is concerned, we cannot see, then, that any mischief was done; and it is not suggested that counsel desired to put similar questions to any other witness, or that they were deterred from doing so by this ruling of the court.

5. It is also assigned for error that plaintiff was allowed to testify in his own behalf. He was quite competent to testify as to facts occurring since the death of the other

contracting party ; and all of his testimony was of this character, if we except some evidence in rebuttal of one Dickson, as to an immaterial conversation between plaintiff and the deceased, which had no connection with the cause of action. To exclude a witness on account of the death of the other party, the matter offered in evidence must be something relating to the contract in issue, as to which the lips of the other party are sealed in death. *Poe* v. *Domic*, 54 Mo. 119.

6. Lastly, it is said that there was no evidence that defendant, William C. Jamison, is administrator of the deceased. Jamison himself was present during the trial. This proceeding is an appeal from the Probate Court, and it appears. that he waived notice of the demand. There is nothing in this objection, which is raised here for the first time.

No error appearing in the record which could prejudice appellant, and warrant a reversal of the judgment of the Circuit Court in this case, it is affirmed. All the judges. concur.