THE STATE v. BOYD, Appellant.

Division Two, November 17, 1903.

1. **Change of Venue:** UNASSIGNED ERROR. The action of the trial court in denying defendant a change of venue is not reviewable on appeal if no complaint of its action was made in the motion for a new trial and the attention of the appellate court is not called to any error in respect to it.

2. **Rape:** PUNISHMENT: FORMER CONVICTION. The defendant can not complain that his punishment was fixed at fifty years' imprisonment, instead of for life, as the jury were instructed to punish him if they found him guilty of rape and also found that he had previously been convicted and had served a term in the penitentiary.

3. **Former Conviction:** EVIDENCE: ADMISSION. Where defendant's former conviction has been established by the proper record evidence, testimony that he had stated that "he had served a term in the penitentiary," is competent, not for the purpose of showing the fact of former conviction, but for identifying the defendant.

4. **Reputation:** COMPETENCY OF WITNESS. The general reputation of a defendant means what people in the community in which he resides generally say when speaking of him; and although defendant may have worked for certain witnesses, yet if they do not have any knowledge of the estimate put upon him in the community, they are not competent to testify as to what his reputation is.

State v. Boyd.

5. **Witnesses:** EXTENT OF CROSS-EXAMINATION. It was not error on cross-examination of a witness for defendant to inquire about her child being born out of wedlock. The extent of cross-examination is largely in the discretion of the trial court.

6. ————: ———: REPUTATION. Where a witness testifies that the reputation of defendant is good, it is not error to ask her if she had heard that the defendant had served a term in the penitentiary.

7. **Evidence:** CONVERSATION WITH OTHERS. Conversations by defendant's mother and sister with him, in which they had warned him against the prosecutrix and stated to him that she would get him into trouble, are not competent.

8. **Remarks of Prosecuting Attorney.** The prosecuting attorney stated to the jury in his argument: "The name of defendant is written in the walls of the penitentiary," which the evidence showed to be a fact. *Held*, not prejudicial. The jury had a right to consider the fact that defendant had served a term in the penitentiary, both in fixing his punishment, and as affecting his credibility as a witness.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney*, Judge.

AFFIRMED.

*B. M. Henderson* and *Lewis Jones* for appellant.

*Edward C. Crow*, Attorney-General, and *Bruce Barnett* for the State.

(1.) The first four grounds of the motion for new trial are that the verdict is against the law and the evidence. The testimony of the prosecuting witness makes out a clear and strong case of rape against the defendant. This is all that is necessary to sustain the verdict. State v. Marcks, 140 Mo. 656. (2) An exception was saved to the action of the court in permitting the State to show that the defendant had stated to the sheriff that he had pleaded guilty to a charge of rape, and had served a term in the penitentiary therefor. The State proved this fact by proper and competent evidence, viz., the records of the court proceedings in that case, but the fact that this record evidence was necessary did not make it improper to admit oral testimony of this kind

State v. Boyd.

along the same line. State v. Miller, 100 Mo. 606; State v. Taylor, 118 Mo. 153. Such evidence was relevant under the indictment as affecting the amount of punishment to be assessed. R. S. 1899, sec. 2379. It was particularly proper for the purpose of identifying the defendant as the same Grant Boyd who was referred to in the court records, introduced in evidence. And as the defendant testified in his own behalf, it was relevant as tending to impeach his testimony. State v. Dyer, 139 Mo. 199. (3) Exceptions were saved to the court's action in permitting the State to show by defendant's witness, Hattie Buckner, that her child had been born out of wedlock. Such questions are proper on cross-examination. Muller v. St. Louis Hospital Ass'n, 5 Mo. App. 390; affirmed, 73 Mo. 242; Goins v. City of Moberly, 127 Mo. 116; Stephens' Dig. Law of Evid., 123. (4) Exceptions were saved to the court's action in permitting the State to ask Pearl B. Street on cross-examination if she had not heard of defendant's having been in the penitentiary on a case of ravish. The defense had asked this witness on direct examination as to defendant's reputation, and she had stated that it was good. It was proper, therefore, to ask this question on cross-examination. State v. McLaughlin, 149 Mo. 19; Martin v. Miller, 4 Mo. 47. However, the question was not answered. (5) The court was right in sustaining the State's objections to questions put to witnesses, Mrs. Annie Fox and Ida Hezelbach, by the defense, as to the defendant's reputation. Both of these witnesses stated that they did not know the defendant's reputation, and having thus disqualified themselves, the court properly refused to permit them to state whether defendant's reputation was good or bad. State v. Cox, 67 Mo. 392; State v. Brady, 87 Mo. 142; State v. Hains, 160 Mo. 555. (6) The defense sought to prove that defendant's sister and mother had warned him not to have any relations with Ida Andrews. The court was clearly right in excluding such evidence. (7)

There was no impropriety in the prosecuting attorney's making the remark in his argument, "the defendant's name is written in the walls of the penitentiary." It was a fact which affected the credibility of the defendant's testimony. State v. Dyer, 139 Mo. 199; State v. Vandiver, 149 Mo. 502. The remark, therefore, amounted to nothing more than a comment upon the weight to be given to the defendant's testimony. If such remark was in any way improper, its prejudicial effect was counteracted by proper instructions given by the court, telling the jury what consideration they should give to the fact of defendant's plea of guilty and imprisonment upon the former charge. State v. Hack, 118 Mo. 92.

FOX, J.—The defendant, a negro, was convicted at the January term, 1903, of the circuit court of St. Louis county, upon a charge of rape upon the body of one Ida Andrews, and his punishment assessed at fifty years in the penitentiary.

The testimony of Ida Andrews, the prosecuting witness, was to the effect that on May 29, 1902, she was at work at the residence of one Mrs. Dawson in Webster Groves, in St. Louis county, and feeling sick at about a quarter to five o'clock in the afternoon, started for her home on Farm avenue in that town. Still feeling sick when she reached home, she seated herself upon her front porch and leaned her head upon her hand. On her way she had noticed Grant Boyd, the defendant, sitting on the steps at his mother's home on Shady avenue, it being the house just next to hers.

While the prosecuting witness was sitting in this posture, the defendant came up and asked her for a cool drink of water, and she told him that her husband had the key; that he was at the greenhouse and that, therefore, she could not get in to get the draw bucket. She then told the defendant to "go on home," and he obeyed, but returned about half an hour later, saying,

"Mrs. Andrews, Mrs. Andrews, Mrs. Andrews, Hattie is sick and she says for you to come over there." Hattie was the defendant's sister.

Ida, who had dozed off to sleep in the interval between these two visits which the defendant paid her, aroused herself and told him that she was sick herself they came to the door, he gave her a push and com- to the fence. The defendant insisted that she should go, saying that his mother was away at her work, and that Hattie was not able to come to the fence. Thinking that perhaps Hattie's condition was worse than her own the prosecuting witness yielded to these entreaties, and went with defendant, she walking ahead of him. When they came to the door, he gave her a push and commanded her to go in. Ida asked the meaning of this treatment, and the defendant replied that Hattie was not sitting there in the door, but was up stairs, and commanded her to go up. This she did and called several times for Hattie. Receiving no answer and perceiving that Hattie was not in the house, she returned to the lower floor and found that the defendant had locked the door. She placed her hand upon the doorknob to go, and the defendant told her she could not get out at that door, and with curses commanded her to take her hand off the knob. The prosecuting witness demanded to be let out, and the defendant renewed his curses and threatened to kill her if she did not take her hand off the doorknob. The defendant then cursed Ida and commanded her to lie down, and when she refused and demanded to be let out of the house, he seized his gun and said, "God damn you, lie down here, if you don't I will kill you," and seizing her by the shoulder threw her down and jumped upon her with his knee, and cursing still, commanded her to "open up." She screamed, but he seized her by the throat and forced her to silence. He then forced himself between her legs and accomplished his purpose, keeping his victim down six or seven minutes, having intercourse with her, penetrating her pri-

State v. Boyd.

vate parts with his own, and making an emission or dis-charge.

The prosecuting witness offered such resistance as she could, but was overpowered and outmanaged, as she testified; she also threatened to tell Will (her husband), but the defendant said, "Damn Will," and commanded her to lie still, and threatened to kill her. During all this time the defendant had a gun lying at his side, but the prosecuting witness testified that she was "so scared and outdone" that she didn't think of the weapon.

After this the defendant told Ida that he would kill her if she ever told anyone what had happened. He then released her from the house through the kitchen door, and she started home, but fell near the gate and lay for a length of time, which seemed to her to be about ten minutes. Upon coming to her senses, she went to the house of Mrs. Martha Stone, where, besides Mrs. Stone, she saw Josephine Stone, Victoria Robinson, Mollie Thurman and Fannie Thomas, this last-named person being the defendant's sister. She told these parties that she had been assaulted and raped by Grant Boyd, the defendant. She also told one Mrs. Laumand, as well as Frank Elazer, a man who had been working that day at the house where she too had been employed. She sought physicians and had her body examined, and about seven o'clock met her husband and told him what had occurred. She also reported the matter promptly to the town marshal and to a justice of the peace. All of these parties were introduced as witnesses by the State, and testified that immediately after the time of the occurrence, she told them that she had been raped by Grant Boyd, and several stated that she was crying as she told it, and her appearance was that of fright and agitation.

Bennie Elazer, a boy eleven years of age, testified that at the time of the occurrence he was at play about a block and a half away, and saw the defendant standing

at the fence talking to Ida Andrews; saw them going to the house of defendant's mother, Ida walking ahead of the defendant, and saw her running back a few minutes later, the direction from which she came indicating that she had come out at the kitchen door.

Dr. Marshall Baker, a physician, examined the prosecuting witness soon after the affair, and found a redness about the lower part of her abdomen and above the thighs, and found her complaining of sore places upon her body.

Soon after five o'clock that evening, Mollie Thurman saw defendant board a street car for the city of St. Louis, and about seven o'clock Louis Thurman saw him seven miles from Webster Groves, walking north. After the town marshal was notified of the rumored rape, a search was made for the defendant and he was found at the house of his sister in the city of St. Louis.

The defendant, testifying in his own behalf, stated substantially that he was sitting on the porch at his mother's house, and the prosecuting witness came over and asked him if he could "go the route" that afternoon; that he answered that he never refused and thereupon they both went into the house, he locked the door at her request, she voluntarily lay down upon the floor, and they joined in intercourse by her consent, she assisting him to make the penetration. Defendant denied that he pointed a gun at the prosecuting witness or that he had a gun in the room.

He further testified that after this had happened, Ida asked him for five dollars to go on an excursion to Jefferson City; that he told her he did not have the money, and she said, "All right, I'll fix you;" that she then walked out through the kitchen door, across the little bridge into her own yard, and sat down and called the defendant all manner of names, and said she would fix him if she lived; that soon afterward she went over towards Mrs. Stone's.

The defendant's explanation of his flight to St.

Louis was that his mother heard of the accusation Ida Andrews was making against him, and she did not want the arrest made at her house, and to please her he left and went to the house of his sister in the city of St. Louis.

It was pleaded in the indictment and proved in evidence that the defendant had upon a former occasion pleaded guilty to an indictment for attempt to rape, had been sentenced to four years in the penitentiary therefor, and had served his term and been discharged under the three-fourths rule.

Defendant put his reputation in issue, and there was testimony tending both ways on that question. There was also testimony introduced of the complaints made by the prosecuting witness to various persons, after her claim of being assaulted.

The court very fully instructed the jury at the close of the evidence. The instructions were as follows:

"1. The court instructs the jury as follows: The defendant is charged in the indictment with rape, and the jury will either find him guilty of rape as charged in the indictment, or find him not guilty, as you may believe and find from the evidence, under the instructions. If you find the defendant not guilty, you will simply so state in your verdict.

"If you find the defendant guilty, you will state in your verdict that you find the defendant guilty of rape as charged in the indictment, and will assess his punishment at imprisonment in the State penitentiary for a term of not less than five years, or at death.

"2. If you believe and find from the evidence that the defendant at the county of St. Louis and State of Missouri, on or about the 29th day of May, 1902, at a time before the 24th day of September, 1902 (being the date of filing the indictment herein), did, feloniously and forcibly and against the will of the prosecuting witness, Ida Andrews, make an assault upon her, the said Ida Andrews, and feloniously and forcibly and against

her will, ravish and carnally know her, the said Ida Andrews, then you will find the defendant guilty of rape as charged in the indictment. 'Feloniously,' as used in the indictment and the instructions, means wickedly and against the admonitions of the law, and refers to the character of punishment prescribed by law.

"3.   Before you can find the defendant guilty of rape, you must believe and find from the evidence that the defendant forcibly assaulted and had sexual intercourse with the said Ida Andrews at the time and place mentioned in the preceding instructions, against her will.

"You can not find that there was such sexual intercourse unless you believe from the evidence that the defendant penetrated the private parts of the body of the said Ida Andrews with his private parts, to some extent.   But to constitute such intercourse, it is not necessary that you should believe that there was an emission or discharge.

"And you can not find that such intercourse was forcible or against the will of said Ida Andrews or without her consent, unless you find that she made the utmost resistance of which she was capable, to prevent it; and whether or not such consent was given should be determined from all the facts and circumstances which you consider proved by the evidence.

"4.   It was the duty of the prosecuting witness, the said Ida Andrews, at the time of the alleged assault, to make an outcry, and as soon as an opportunity offered, to complain of the alleged offense to others; and unless you believe from the evidence that she did make such outcry at the time, and did make such complaint as soon as the opportunity offered, then you should take such circumstances of omission to make an outcry or complaint, or both, into consideration, with all the other evidence, in determining whether or not, in fact, a rape was committed.   But such complaints, if any were

made, are not to be considered as evidence of the matters complained of, but only as tending to corroborate or not to corroborate her testimony, so far as you may believe they do tend to corroborate or fail to corroborate the same.

"5. The charge of rape is in its nature a most heinous one, likely to create a strong prejudice against the accused. It is a charge easy to make and hard to disprove. On this account you should bear in mind the difficulty of defending against such charge, and consider most carefully all the evidence and the instructions in making up your verdict.

"6. The court further instructs the jury that the indictment is no evidence and creates no presumption of the guilt of the accused. The defendant is, in law, presumed to be innocent, and this presumption attends him throughout the trial until his guilt is proved beyond a reasonable doubt, and you can not convict him unless the State has proved his guilt to your satisfaction and beyond a reasonable doubt. If upon consideration of all the evidence in the case, you have a reasonable doubt of his guilt you should give him the benefit of such doubt and acquit him. 'Reasonable doubt,' as used in these instructions, to entitle the defendant to an acquittal on that ground, means a substantial doubt arising in your minds upon careful consideration of all the facts and circumstances proven in the case, and not a mere possibility of the defendant's innocence.

"7. If you believe and find from the evidence that the defendant immediately after the time of the alleged assault fled from the house where he was staying in the county of St. Louis, for the purpose and with the intent to avoid arrest by the officers of the law and trial for such alleged assault, such flight should be considered by you in connection with all the other evidence in the case in determining the question of the defendant's guilt or innocence. But if you do not believe that he fled or attempted to flee for the purpose of avoiding arrest or

trial, but that he went away for some other purpose, then such act on his part should not be considered as any evidence against him.

"8. If you believe from the evidence that the defendant, prior to this trial, made any statement or statements concerning the alleged offense, then you may consider such statement or statements in evidence, but you should consider them altogether and also the circumstances under which they were made. The defendant is entitled to the benefit of what he said for himself, and the State to the benefit of what he said, if anything, against himself; what the defendant said against himself, if anything, the law presumes to be true, because said against himself.

"What he said for himself you are not bound to believe, because said in a statement or statements proved by the State, but you may believe it or disbelieve it as it is shown to be true or false by all the evidence in the case. It is for you to consider, under all the circumstances, from the evidence, how much of the whole statement or statements of the defendant proved by the State is worthy of belief. But before you give any such statement of defendant any consideration, you must be satisfied that such statement was made concerning the alleged crime; and you should also receive the same with care and caution and be satisfied that it was correctly given or repeated in evidence before giving any weight or consideration to the same.

"9. The previous good character of the defendant, if shown to your satisfaction, is a matter which you should consider and weigh like any other fact in the case, in determining his guilt or innocence; for the law presumes that a man of good character and reputation is less likely to commit an offense than a man of bad character. If, however, from all the evidence before you, including the evidence as to such previous good character, you are satisfied of the defendant's guilt beyond a reasonable doubt, then you should find him

guilty notwithstanding he has proved a previous good character.

"11. If you find the defendant guilty of rape as set forth and explained in the preceding instructions, and if you further believe and find from the evidence that the defendant on the 15th day of January, 1889, was, upon his plea of guilty, convicted of the crime of an assault with intent to commit rape, and thereupon sentenced to imprisonment in the penitentiary for a term of four years for such criminal assault, and was thereupon duly incarcerated in the penitentiary of this State in compliance with said sentence, and thereafter on or about the 14th day of April, 1892, was discharged from said penitentiary, after having served three-fourths of the time of his said sentence in said penitentiary, then if you should assess the punishment of the defendant for the crime of rape charged in the indictment in this suit at imprisonment in the State penitentiary, you should assess such punishment at imprisonment in the State penitentiary for the term of his natural life.

"12. The evidence concerning the alleged prior conviction and imprisonment of the defendant upon another charge, is no evidence tending to show guilt of the defendant of the charge of rape upon Ida Andrews made in the indictment against him; but upon said last-mentioned charge the same should be considered only in so far as you may believe it tends to show the character of the defendant and his credibility as a witness so far as you may believe it to be affected by his character as explained in other instructions. Otherwise said alleged prior conviction and imprisonment should become material only in case of a conviction upon the main charge made in the indictment, in determining whether or not the punishment of the defendant, if found guilty of said main charge, should be increased by reason of said prior conviction and im-

prisonment, as more fully explained in other instructions.

"14. The defendant himself is a competent witness in his own behalf, but the fact that he is the defendant and as such interested in the result of the case, may be considered by you in determining the credibility of his testimony. Yet, as a whole you should receive and consider his testimony like that of any other witness and subject to the same rules as explained in the other instructions.

"15. The jury are the sole judges of the weight of the evidence and the credibility of the witnesses. In weighing the testimony of any witness you should take into consideration the character of the witness so far as you may believe there is any evidence of character, the interest, if any, of the witness in the event of the case, or want of such interest, the manner or conduct of the witness in testifying, and the probability or improbability of the testimony of such witness in view of all the evidence, facts and circumstances surrounding the case, and you should give the testimony of each witness such weight as, under all the evidence and surroundings, you think it entitled to. If you believe any witness has willfully sworn falsely to any material fact or facts in the case, you should disregard such false testimony and you are at liberty, in the exercise of your judgment, to disregard any other part or parts of the testimony of such witness.

"16. Since this is a criminal case and not a civil case, you can not render a verdict unless all twelve of the jurors concur in and agree to the same."

The court also gave to the jury, in connection with the foregoing instructions, the following two instructions asked by the defendant:

"10. The jury are instructed that the testimony given by witnesses that they 'never heard anything said against the moral character of the defendant,' must be given such weight as you consider it is worth, for it is

a fact submitted to you and you must consider it as you do any other fact or facts in this case.

"13. The jury are instructed that the testimony submitted in this case as to a former conviction of the defendant was submitted to you for the purpose of guiding you in measuring the punishment of the defendant in the event you find him guilty of the rape as charged in the indictment; therefore you will first consider whether or not the defendant is guilty of the offense of rape as charged in the indictment, before you consider the fact of his former conviction under his plea of guilty in this court.''

This cause was submitted to the jury upon the evidence and instructions as herein indicated, and the jury returned their verdict, finding the defendant guilty of rape as he stood charged in the indictment, and fixed his punishment at imprisonment in the penitentiary for fifty years. From this judgment of conviction, defendant, in proper time and form, presented his appeal to this court.

There is no statement and brief, nor assignment of errors filed in this cause by appellant, but notwithstanding the absence of any suggestions as to errors in the trial of the circuit court, we have the record before us and have given to defendant the benefit of a careful consideration of the entire proceeding in this cause.

The record first discloses an application for a change of venue from the county in which said cause was pending. Upon that application an issue was formed, the testimony heard by the trial judge, and the change of venue was denied. The action of the trial court upon this application is not complained of in the motion for new trial, nor is the attention of the court called to any error in respect to its ruling upon it, hence, the court's action upon that question is not before us for review.

Complaint is made that the verdict of the jury is not responsive to the instructions. This contention,

doubtless, is based upon the theory that it having been satisfactorily proved that defendant, prior to this charge, had been convicted and served a term in the penitentiary, if found guilty of this offense, his punishment should have been assessed as pointed out in instruction numbered 11. This is not an error of which the defendant has a right to complain. If the jury ignored instruction numbered 11, and refused to attach the increased penalty to this offense, by reason of his former conviction, certainly it affords no ground for complaint.

Appellant complains, and urges it as error, that certain witnesses were permitted to testify as to certain statements of the defendant in which he said he "had served a term in the penitentiary." This did not constitute error, under the indictment in this cause. It will be observed that the indictment pleaded a former conviction, in order to increase the penalty that might be assessed upon a conviction in the present case. The State had a right to show the former conviction, which was done by the record in that cause, and while the State could not establish the fact of a former conviction by his admissions, yet in connection with the record of that conviction, it was competent for the purpose of identification of the defendant. A defendant by the name of Grant Boyd had previously been sent to the penitentiary, as indicated by the record, and judgment of sentence; and an admission by the defendant in this cause, whose name is Grant Boyd, that he had previously been sent to the penitentiary, would tend strongly to indicate that they were the same person. There was no error in the admission of this testimony, and if there had been, it was fully covered by the introduction of the proper proof of his conviction and the record of the same.

Complaint is also made that State's counsel, upon cross-examination of witness Mahaney, were permitted to inquire into the defendant's reputation. This witness was introduced by the defendant for the purpose of

showing a good reputation, and the defendant having put his reputation in issue, the cross-examination upon that issue was legitimate, legal and proper.

It is further insisted that the court committed error in excluding the testimony of witnesses Fox and Hazelbach. The record discloses that those witnesses were introduced upon the issue of reputation of defendant. These witnesses both state, as the record will verify, that they were not acquainted with the reputation of the defendant. They had no knowledge whatever as to the estimate put upon his standing in the community, by the people. He had worked for them a short time, they knew him personally, and that was all. If they did not know his general reputation, and that means what people in the community in which defendant resided generally say when speaking of him, they were incompetent to testify on that subject. The action of the court in excluding their testimony is fully supported and justified by the ruling of this court in case of State v. Haines, 160 Mo. 555.

Numerous other exceptions are preserved in the record to the action of the court, during the progress of the trial. Upon the cross-examination of witnesses, Hattie Buckner, a witness for defendant, was asked in respect to her child being born out of wedlock. This is complained of as error. The extent of cross-examination is largely in the discretion of the court. This cross-examination was in harmony with the rule announced in Muller v. St. Louis Hospital Association, 5 Mo. App. 401, and approved in the same case by this court in 73 Mo. 242. It was very clearly announced as the correct rule that: "When a witness is cross-examined, he may, in addition to the questions hereinbefore referred to, be asked any questions which tend to test his accuracy, veracity, or credibility, or to shake his credit by injuring his character. He may be compelled to answer any such question, however irrelevant it may be to the facts

in issue, and however disgraceful the answer may be to himself, except where the answer might expose him to a criminal charge. This is the rule. [Ring v. Jamison, 2 Mo. App. 591.] But the extent of cross-examination of this nature is somewhat in the discretion of the court and must necessarily be so, to prevent abuse.''

There was no error in the cross-examination complained of, in asking witness Street if she had heard that defendant had served a term in the penitentiary. This witness had stated upon examination in chief that defendant's reputation was good, hence followed the question referred to upon cross-examination; this was not an improper exercise of discretion. This court has spoken in no uncertain terms on the subject of cross-examination, and the cross-examination objected to is not in conflict with the rule announced.

It was said by this court in State v. McLaughlin, 149 Mo. l. c. 33: ''It is settled law that when a witness is called to sustain or attack the reputation of another witness, the opposite party may cross-examine him liberally as to his means of knowledge, and test his own truthfulness, and it is largely a matter of discretion with the court how far such an examination shall be allowed. We think it would be an unwise exercise of our appellate jurisdiction to reverse a cause on this showing alone.''

The record further discloses that defendant sought to introduce a conversation between the mother and sister of defendant, and the defendant, the object of which was to show that they had warned the defendant that the prosecuting witness, Ida Andrews, would get him into trouble, and for him to have no communication with her. This testimony was clearly incompetent and irrelevant, and the ruling of the trial court excluding it was correct.

Numerous other objections and exceptions to the admission and rejection of evidence are preserved in the record, but they are without substantial merit, and

do not justify the reversal of the judgment in this cause.

It is insisted that the improper remarks of the prosecuting attorney in his remarks to the jury, constituted error, for which this cause should be reversed. We are unable to concur with the view of counsel for appellant in this contention. The objectionable remarks, as recited in the motion for new trial, were: "The defendant's name is written in the walls of the penitentiary." How could this remark operate to the injury of defendant? The jury knew, by the solemn record introduced in evidence, that this was a fact. It was not a statement to the jury that was not in proof before them. It was a fact proven in the case, and the counsel for the State had the right to refer to it in argument. It was a fact to be considered by the jury for two purposes: one in fixing the punishment, and the other as affecting defendant's credibility as a witness. There is no merit in this contention, and it must be ruled against the appellant.

The prosecuting witness in this cause fully details all the facts relative to this most fiendish and outrageous assault upon her. She made such outcry as was consistent with the conditions surrounding her at the time, made complaint of the outrage committed upon her at the very first opportunity, and it was for the jury to determine the truth or falsity of her testimony. Her acts and conduct; the testimony of the doctor, all tend to corroborate her testimony. The jury gave weight and force to her testimony, and this they had a right to do. If they believed it to be true, it authorized his conviction. [State v. Marcks, 140 Mo. 656.]

This record discloses that defendant had a fair and impartial trial. The instructions of the court are full, fair, and, taken altogether, present the case very favorably to the appellant, and are in harmony with the forms and precedents heretofore fully approved by this court.

Finding no reversible error, the judgment will be affirmed. All concur, except Burgess, J., absent.